## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into by Dwight School Canada Society, New York Preparatory School, Inc. t/a Dwight School, FSHC Properties, LLC, and Stephen Spahn (collectively the "Dwight Parties"), on the one hand, and Ivy Christian College f/k/a Ivy Christian Academy and Ivy Christian Academy Foundation (sometimes collectively the "Ivy Parties"), on the other hand, as of December 4, 2014 (the "Effective Date").

## RECITALS

A. Dwight International School Society was the name of a not-for-profit society incorporated under the laws of Canada and having its principal place of business at 2371 Shawnigan Lake Road, Shawnigan Lake, British Columbia V0R2W5, and a foreign branch in the Republic Korea located at Dwight School Seoul, 1582-1, Sangam-dong, Mapo-gu, Seoul, Korea 121-835. In 2013, Dwight International School Society changed its name to Dwight School Canada Society. For all purposes herein, this entity will be referred to as "DIS Society," and its foreign branch will be referred to specifically as "DIS Society Foreign Branch."

B. New York Preparatory School, Inc. is a New York education corporation that operates a school in New York under the trade name of Dwight School at 291 Central Park West, New York, NY 10024 ("Dwight School").

C. FSHC Properties, LLC is a New York limited liability company that owns certain property, including property located at 291 Central Park West, New York, NY 10024.

D. Stephen Spahn, the Chancellor of the Dwight School, is an individual who resides in New York.

E. Dwight International School Seoul ("DIS Seoul") is a foreign school in Seoul, Republic of Korea, operated by DIS Society through DIS Society Foreign Branch.

EXHIBIT E

F.  Ivy Christian College f/k/a Ivy Christian Academy ("ICA") is a Virginia corporation having its principal place of business at 9401 Mathy Drive, Suite 200, Fairfax, Virginia 22031. Ivy Christian Academy Foundation ("IVCAF") is a branch office of ICA.

G.  In 2009, the Ivy Parties approached DIS Society and Dwight School regarding the possibility of working together on a bid to be submitted to the Seoul Metropolitan Government ("SMG") to establish and operate an international school in Seoul, Korea.

H.  At the request of the Ivy Parties, DIS Society and Dwight School submitted a bid to the SMG to establish and operate DIS Seoul. The Ivy Parties represented and advised DIS Society throughout SMG's bidding process. In May 2010, the SMG selected DIS Society to operate the school, which would be known as DIS Seoul. On August 12, 2010, DIS Society entered into the "Basic Agreement for DMC Foreign School(Tentatively named) Property Lease and School Management" for purposes of leasing the school site("SMG Lease"). DIS Society operates DIS Seoul through DIS Society Foreign Branch.

I.  On August 17, 2010, following the execution of its agreement with the SMG, DIS Society entered into a management agreement with the Ivy Parties (the "Management Agreement"). Disputes over the terms, performance and termination of the Management Agreement have led to litigation in the United States (Fairfax Circuit Court Case No. 2012-9068) between the Dwight Parties and the Ivy Parties(the "Litigation"). Legal proceedings (including civil litigation and criminal investigations) are also pending in the Republic of Korea against the Dwight Parties, Jerry Salvador, and Graham Brown (the "Korean Proceedings"). Separately, legal proceedings (specifically, criminal investigations/prosecutions) are pending in the Republic of Korea against certain former employees of the Ivy Parties, Yunjae "Julie" Lee, Sunghee

"Michael" Lee, and Daehee "David" Lee, based upon their conduct during their time as Ivy employees (the "Former Employee Proceedings").

J. The Dwight Parties and the Ivy Parties wish to resolve their disputes amicably pursuant to the terms of this Settlement Agreement, which completely resolves and concludes the Litigation and those aspects of the Korean Proceedings over which the Parties have control.

## AGREEMENTS

In consideration of the mutual covenants and conditions contained in this Agreement, and intending to be legally bound, the Parties agree that:

1. **Incorporation of Recitals**. Recitals "A" through "J" above are made an integral part of this Agreement.

2. **Consideration**. As consideration for the mutual general releases contained in Paragraph 3 of this Agreement, the following consideration will be exchanged between the Parties:

    a. Kang Kun Lee will be recognized as a founder of DIS Seoul, a fact that will be displayed on the official website of DIS Seoul at all times consistent with how other board members and school founders are acknowledged.

    b. Beginning with the 2014-2015 academic year, and continuing until the End Date, as defined herein, the Ivy Parties will have the permanent right to select one member of the board of directors of the DIS Society Foreign Branch("Ivy Board Member"), which oversees and governs DIS Seoul pursuant to Korean law. The Ivy Board Member must qualify for board membership under all applicable laws and regulations, as well as under the bylaws of DIS Society Foreign Branch so long as those bylaws do not conflict with the express provisions of this Agreement. It is expected that the Ivy Board Member initially will be Kang Kun Lee.The Ivy Board Member shall not be removed except for good cause (notwithstanding any bylaw provision to the contrary). If any Ivy Board Member is removed for good cause, the Ivy Parties shall have the right to appoint a replacement board member. So long as an Ivy Board Member serves on the board pursuant to this paragraph 2(b), DIS Society will pay IVCAF or its designee USD $50,000 annually("Stipend"), or the equivalent of the annual amount paid to any other board member, whichever is higher. The payments shall be made to the bank account

specified in paragraph 2(h) herein. The Stipend will be paid in equal monthly installments, the first of which shall be due within ten (10) days of the Effective Date. While serving as a Board member, the Ivy Board Member, or his/her designee, shall have the right to a quarterly financial report from the Chief Financial Officer of DIS Seoul. The Ivy Board Member may also be accompanied to any Board meetings by a translator which will be supplied by the school. The Ivy Board member will be allowed to provide input regarding the number and identity of any new board members, which input DIS Seoul will agree to take into account in good faith.

c. "End Date" shall be defined as the earliest date on which one of the following occur: (i) the end of the life of the SMG Lease, including its option to renew for additional years, which shall require the mutual consent of DIS Seoul and IVCAF; or (ii) the closure of DIS Seoul. The rights and obligations of the parties hereto shall inure to the benefit of, and be binding and enforceable upon, the respective successors and assigns of the parties; unless DIS Seoul is closed and returned to the Seoul Metropolitan Government, in which case the "End Date" will be deemed to have occurred.

d. DIS Society will designate an office within DIS Seoul for use of members of the board of directors of DIS Society Foreign Branch, including the Ivy Board Member. The office shall be used for school purposes only in accordance with the bylaws of DIS Society Foreign Branch. ~~The Ivy Board Member shall not be required to obtain in advance permission to use the dedicated office or to otherwise visit the DIS Seoul campus.~~ *See Addendum 1 for terms of the Ivy Board Member's right of access to the DIS Seoul campus.*

e. DIS Society is holding 300,000,000 KRW that was among the funds transferred by the Ivy Parties to DIS Society on January 12, 2012 ("Disputed Monies"). The Disputed Monies are the subject of a legal dispute between IVCAF and third party SK Foods and are subject to the provisional attachment order attached as Exhibit A. DIS Society shall hold the Disputed Monies until such time as (i) IVCAF provides DIS Society with written evidence that the provisional attachment order has been suspended or cancelled, and that DIS Society may lawfully return the Disputed Monies to IVCAF, or (ii) DIS Society is ordered to do otherwise by a court of competent jurisdiction. IVCAF will indemnify and hold DIS Seoul harmless from any claim by SK Foods upon disbursement of said 300,000,000 KRW to IVCAF. The funds shall be held by DIS Society in an interest-bearing account, and said interest shall be paid to IVCAF upon release of the funds.

*JRK / JIC*

f. As for the remaining 605,000,000 KRW transferred to DIS Society by the Ivy Parties on January 12, 2012, DIS Society is obligated to hold these funds in an interest-bearing account and to repay the money, plus applicable bank interest, to Ivy in three installments on the following schedule:

i.  200,000,000 KRW (two-hundred million Korean Won) within ten (10) days of the Effective Date;

ii. 200,000,000 KRW on or before the date falling 1 (one) year after the Effective Date; and

iii. 205,000,000 KRW on or before the date falling 2 (two) years after the Effective Date.

iv. Any payments made under this Paragraph 2(f) that are more than five (5) business days after the due date shall be accompanied by a late payment penalty of ten percent (10%).

v. DIS Society shall not make any payments under this Paragraph 2(f) to any entity or individual other than Ivy without Ivy's written consent, except as required by the laws of the Republic of Korea.

g. Beginning in the 2014-2015 academic year commencing in August 2014, and continuing until the End date, DIS Societyshall be obligated to pay to Ivy a sum equivalent to 2% (twopercent) of all of DIS Seoul's academic-related revenues, which shall be defined as all tuition and fees (including, to the extent permitted by the laws of the Republic of Korea: registration, capital, after-school program, summer school, and other fees) paid to DIS Seoul by students for academic services, but excluding fees for cost-based, non-academic services such as transportation, meals or school supplies(collectively, "Revenue Payments").DIS Seoul, to the extent permitted by the laws of the Republic of Korea, shall be jointly and severally liable for the Revenue Payments. The Revenue Payments shall be paid in four (4) quarterly installments per each academic year, with payments being made on or before the last day of November, February, May, and August. DIS Society and DIS Seoul shall not pay any Revenue Payments to any entity or individual other than Ivy without Ivy's written consent, unless required by the laws of the Republic of Korea. The first payment to Ivy, representing the November 2014 payment, shall be made within ten (10) days of the Effective Date.

h. DIS Society shall wire the payments in Articles 2(b),(e), (f)and (g) to the following bank account:

i. Account to be designated by Ivy.

i. An authorized Ivy representative shall notify DIS Society in writing should it wish to have the payments referenced in Articles 2(b),(e),(f) or (g) wired to a different bank account.

j. Within 60 days of the execution of this Agreement, DIS Society will cause DIS Seoul to offer an employment contract to Byung Kim for a position commensurate with his skills and experience on terms mutually agreeable to Mr. Kim and DIS Seoul.

k. Upon execution of this Agreement, the parties will cause their attorneys to dismiss with prejudice the Litigation and the civil litigation pending in the Korean Matters. With respect to any pending criminal investigations of the Dwight Parties, Jerry Salvador, and Graham Brown, the Parties recognize and acknowledge that the Ivy Parties do not control the criminal proceedings in the Republic of Korea. The Ivy Parties agree to take no steps in furtherance of those investigations and to inform criminal and prosecutorial authorities in the Republic of Korea that their disputes with the Dwight Parties, Spahn, Salvador and Brown have been resolved.

3. **Releases.** Upon the parties' execution of this Agreement, the following releases shall be effective:

a. ICA and IVCAF irrevocably and forever release and discharge DIS Society and its subsidiaries, members, officers, directors, managers, parent company, affiliates, contractors and employees (including but not limited to DIS Seoul, DIS Society Foreign Branch, Jerry Salvador, Graham Brown, Julie Lee (Yunjae lee), David Lee (Daehee Lee), and Michael Lee (Sunghee Lee)), from any and all injuries, charges, breaches, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages (including, but not limited to, compensatory, punitive, and exemplary damages), actions, causes of action, suits, rights, demands, costs, and expenses of any nature whatsoever (including, but not limited to, attorneys fees and costs), known or unknown, which they have or may have, arising from any act whatsoever, through the date of this Agreement. ICA and IVCAF fully, finally, and completely release any and all claims against DIS Society and its subsidiaries, members, officers, directors, managers, parent company, affiliates, contractors and employees (including but not limited to Jerry Salvador, Graham Brown, Julie Lee (Yunjae lee), David Lee (Daehee Lee), and Michael Lee (Sunghee Lee)) which have been asserted or could have been asserted in the Litigation. This Release shall not release DIS Society from any obligations that are contained in this Agreement.

It also shall not release Julie Lee (Yunjae Lee), David Lee (Daehee Lee) and Michael Lee (Sunghee Lee) from actions they took prior to their employment with DIS Seoul that were unrelated to their employment by DIS Seoul.

b. ICA and IVCAF irrevocably and forever release and discharge Dwight School, FSHC Properties, LLC, and Stephen H. Spahn, and their subsidiaries, members, officers, directors, managers, parent company, affiliates, contractors, employees, agents, and heirs, from any and all injuries, charges, breaches, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages (including, but not limited to, compensatory, punitive, and exemplary damages), actions, causes of action, suits, rights, demands, costs, and expenses of any nature whatsoever (including, but not limited to, attorneys fees and costs), known or unknown, which they have or may have, arising from any act whatsoever, through the date of this Agreement. ICA and IVCAF fully, finally, and completely release any and all claims against Dwight School, FSHC Properties, LLC, and Stephen H. Spahn, and their subsidiaries, members, officers, directors, managers, parent company, affiliates, contractors, employees, agents, and heirs, which have been asserted or could have been asserted in the Litigation. Dwight School, FSHC Properties, LLC, and Stephen H. Spahn, and their subsidiaries, members, officers, directors, managers, parent company, affiliates, contractors, employees, agents, and heirs, shall have no obligation to make the payments enumerated in Articles 2(b),(e), (f), and (g).

c. DIS Society, DIS Seoul, DIS Society Foreign Branch, Dwight School, FSHC Properties, LLC, Stephen Spahn, Jerry Salvador and Graham Brown irrevocably and forever release and discharge ICA and IVCAF and their subsidiaries, members, officers, directors, managers, parent company, affiliates, contractors and employees from any and all injuries, charges, breaches, complaints, claims, liabilities, obligations, promises, agreements,

controversies, damages (including, but not limited to, compensatory, punitive, and exemplary damages), actions, causes of action, suits, rights, demands, costs, and expenses of any nature whatsoever (including, but not limited to, attorneys fees and costs), known or unknown, which they have or may have, arising from any act whatsoever, through the date of this Agreement. DIS Society, DIS Seoul, Dwight School, FSHC Properties, LLC and Stephen Spahn fully, finally, and completely release any and all claims against ICA and IVCAF which have been asserted or could have been asserted in the Litigation. This Release shall not release ICA and IVCAF from any obligations that are contained in this Agreement.

4. **Confidentiality Agreement**. The Parties agree to keep the terms of this Agreement strictly confidential, and not to disseminate, in any fashion, any of its terms or its contents to thirdparties, unless ordered to do so by a court of competent jurisdiction.

5. **Korean Language Version.** Within ten (10) days of execution of this Agreement, the Parties agree to execute a Korean-language translation of the Agreement, which shall have the same force and effect at this English-language version. To the extent the Korean-language translation of the Agreement conflicts with the English version, the English version controls.

6. **Other General Provisions**.

   (a) <u>No Admissions.</u> The Parties understand and agree that this Agreement is a compromise in settlement of disputed liabilities, obligations and claims and in no way constitutes an admission by any Party of any liability or obligation whatsoever in connection with the subject matter hereof.

   (b) <u>No Reliance.</u> The Parties understand and agree that this Agreement is made solely for the consideration specified above, without reliance on any statement,

warranty or representation of any other Party or its agents or representatives, except as expressly provided in this Agreement.

(c) <u>Drafting.</u> The Parties represent and warrant that they are entering into this Agreement having had the opportunity to obtain advice from counsel. Any usual rule(s) of construction requiring that ambiguities are to be resolved against a particular Party, or in favor of a particular Party, shall not be applicable in the construction of this Agreement.

(d) <u>Headings.</u> The headings contained in this Agreement are for convenience of reference only and shall not under any circumstances affect the meaning or interpretation of this Agreement.

(e) <u>Effect of Settlement Agreement; No Third-Party Beneficiaries.</u> The rights, duties and obligations set forth in this Agreement shall be binding upon and inure to the benefit of the Parties and their respective current and former Officers, Directors, trustees, shareholders, employees, counsel and agents, successors and assigns. No person or entity not a Party to this Agreement has or shall have any rights as a beneficiary or a third-party beneficiary.

(f) <u>Assignments.</u> Each Party represents and warrants that no rights or obligations with respect to the claims or disputes outlined herein have been assigned or transferred to any other person or entity prior to the Effective Date.

(g) <u>Governing Law and Choice of Forum.</u> This Agreement shall be governed by the laws of the Commonwealth of Virginia, without regard to Virginia's choice of law rules. Any dispute concerning the interpretation or enforcement of this Agreement shall be resolved in state or federal courts located in Fairfax County, Virginia or the Eastern District of Virginia, and all parties agree to jurisdiction there. Nothing in this paragraph shall

be interpreted to preclude a court of competent jurisdiction in the Republic of Korea or elsewhere from hearing disputes relating to any alleged non-payment of amounts owed pursuant to this Agreement, or any disputes that are not related to the interpretation or enforcement of this Agreement.

(h) <u>Supplemental Documents.</u> Each Party shall promptly execute any and all supplemental documents that are reasonably required in order to implement the provisions or objectives of this Agreement.

(i) <u>Amendments and Waivers.</u> This Agreement may not be modified or amended, and its provisions may not be waived, except by a written instrument signed by all of the Parties.

(j) <u>Entire Agreement.</u> This Agreement constitutes the entire agreement of the Parties, and all other prior agreements, understandings and statements, oral or written, are merged into this Agreement. The Parties each acknowledge that there are no other agreements or understandings between them that do not appear in this Agreement, and that there have been no oral representations made to induce any of the Parties to enter into this Agreement that do not appear in this Agreement. The parties further agree that this Agreement shall have precedence over all other bylaws or articles under which they operate and hereby affirm that they have the authority to enter the terms herein.

(k) <u>Execution and Copies.</u> This Agreement may be executed simultaneously or in one or more counter-parts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Facsimile or e-mailed copies shall be as valid as originals. Copies of this Agreement shall have the same force and effect as an original, and each of the Parties hereby expressly waives any rights to assert that

such copies fail to comply with "the Best Evidence" Rule or any equivalent rule of law or evidence in any other jurisdiction.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date provided above.

| | |
|---|---|
| Dwight School Canada Society | New York Preparatory School, Inc. |
| By: _____ <br> Its: | By: *STEPHEN SPAHN* <br> Its: |
| Ivy Christian College, Inc. | Ivy Christian Academy Foundation |
| By: *[signature]* <br> Its: *[illegible]* | By: *[signature]* <br> Its: *[illegible]* |
| Dwight School Seoul | FSHC Properties, LLC |
| By: _____ <br> Its: | By: *Stephen Spahn* <br> Its: |
| Dwight International School Seoul | Stephen Spahn <br> *[signature]* |
| By: _____ <br> Its: | |
| | Jerry Salvador |

_____
Graham Brown

*[signature]*

4852-8370-1024. v. 1

## ADDENDUM 1 to Dwight/Ivy Settlement Agreement of 12/5/14

The parties agree that the following provision shall be added to any remaining language not stricken from paragraph 2(d) of the Agreement:

Notwithstanding any bylaws provision to the contrary, the Ivy member shall be permitted to access the office during regular school hours without the requirement of advance permission, so long as the Ivy member gives the board chair three days advance notice of his visit. Dwight reserves the right, however, (i) to deny access to the Ivy member if it concludes in good faith that the Ivy member's access will be disruptive to school operations or is not for school purposes; and (ii) to obtain information from the Ivy board member regarding the purpose of his visit to ensure that Board Member access is made for school purposes only and is not disruptive to the School. Access shall be denied only for so long as required to alleviate said disruption. Access to the school by other visitors is governed by the bylaws and school regulations.

JFC /DRK